## ACKER v. WALKER.

1. **Swamp Lands:** DISPOSITION OF: STATE LEGISLATION. The legislation of this State for the disposition of its swamp lands, and contracts made in pursuance thereof, are valid. Following *American Emigrant Company v. Adams County*, 100 U. S., 61.

2. **Conveyance:** SWAMP LAND: CONTRACT. Where a county entered into a contract with a railroad company to convey all its swamp lands not at that date sold or covered by pre-emption claims, and afterward executed a deed in accordance with such contract, reciting its terms, it was held that such deed was subject to correction as to certain land described therein but which had been in fact sold by the county prior to the execution of the contract, though the conveyance executed therefor was invalid.

3. ———: NOTICE: RECITAL IN DEED. A subsequent grantee of the railroad company for value, however, would not be charged with notice of the prior sale by the county because of the recitals in the deed or contract of his grantor.

4. ——: ——: RECORD OF INVALID DEED. Neither would such grantee be charged with notice by the record of a conveyance executed to such prior purchaser by the county judge, but not countersigned by the clerk nor having the seal of the county court affixed as required by section 935 of the Revision, then in force, but would be protected as a *bona fide* purchaser of the legal title.

*Appeal from Pottawattamie District Court.*

THURSDAY, APRIL 22.

THE plaintiff brought this action in equity to quiet his title to certain eighty acres of land. The defendant set up title in himself to the land. The court found the facts as follows:

"1st. That the land in controversy, to-wit: The south half of the northwest quarter of section No. thirty, in township seventy-six, range thirty-nine, was granted to the State of Iowa, by the United States, by the act of Congress approved September 28th, 1850, entitled 'An Act to enable the State of Arkansas and other states to reclaim the swamp land within their limits.'

"2d. That said land was granted by the State of Iowa to

Pottawattamie county by the act of the legislature of the 13th of January, 1853.

"3rd. That on the 27th day of July, 1859, the county judge of Pottawattamie county executed a deed of said land to one Jas. A. Jackson, but said deed is not countersigned by the clerk of the county court.

"4th. Said deed to Jackson was filed for record with the recorder of deeds on the 5th day of November, 1861, and was duly recorded and indexed, and this plaintiff holds under a chain of title regular on the face of the conveyances from said Jackson, through a number of intervening parties to her testator, and that he acquired his title January 15th, 1867, and paid the taxes on said premises from 1867 to 1875, both inclusive, and Eva S. Nutt also paid taxes thereon as well for 1864, 1871 and 1872, and offered to pay them for other years, and defendant paid all taxes since 1874.

"5th. On the 9th day of January, 1860, the county judge of said county entered into a contract with the Council Bluffs & St. Joseph Railroad Company, whereby said county judge contracted to convey to said railroad company all swamp lands belonging to the county not sold or covered by a *bona fide* pre-emption claim at the date thereof, of the value of forty thousand dollars, to aid said company in the construction of its railway; said company agreeing to deliver to the county as consideration for such conveyance forty thousand dollars of its stock. Said contract was submitted to the electors of the county at the special election, and was by them ratified, and on the 13th of April, 1860, the county judge, in pursuance of such contract, executed to said company a deed for the land in question with many other tracts, and said deed was filed for record on the 21st day of May, 1860, and the said railroad company delivered to said county the said forty thousand dollars of stock in consideration of said deed.

"6th. Said contract, and the conveyance made thereunder, was made in pursuance of the act of the legislature of the 22d of March, 1858, which facts appear by recitals in the

deed, and said deed contains the following conditions, viz: 'Subject, however, to all the provisions of the act of Congress of September 18th, 1850, and with the express understanding that the State of Iowa, and said county, were released from all liability for reclaiming said land, and that said deed was made for the purpose of perfecting said contract.'

"7th. That the officers of said railroad company accepted said deed with the express understanding that should any land be described therein which had been sold prior to the date of the contract, January 9th, 1860, that said railway company would not assert any claim of title on behalf of the company to any *bona fide* legal or equitable claimant therefor, and that said railway company did either re-convey to the county or to the claimant where such facts were brought to the knowledge of the company. That Eva S. Nutt, at the time she purchased said land, had no knowledge of such understanding, and that said deed did not contain the description of any tract of land which any of the records of Pottawattamie county showed to have been at that time conveyed.

"8th. On the 6th day of June, 1862, said railroad company conveyed said land to Eva S. Nutt, who paid value for the same, and she had no actual notice at the time of the conveyance to Jackson, and the railroad company had no actual notice of such conveyance when it accepted the conveyance from the county judge.

"9th. Defendant holds under Nutt by a regular chain of title, all the conveyances being regular on their face.

"10th. The defendant has been the owner, and in the actual possession of said real estate since the year 1873.

"11th. That on January 20th, 1864, the Council Bluffs & St. Joseph Railroad Company made a quit-claim deed to said land to Wm. C. Jackson, the grantee of said James A. Jackson, and through whom plaintiff claims."

From these facts the court found as conclusions of law:

"1st. That the conveyance from the county judge to

James A. Jackson is valid and sufficient in law to vest the title to said land in said Jackson and his grantees.

" 2d. That the conveyance from the county judge to the Council Bluffs & St. Joseph Railroad Company is void for the reason that it was made in violation of the act of Congress of September 28th, 1850, and of the trust imposed on the State by that act.

" 3rd. That the defendant, as well as his grantors, are charged with notice of the invalidity of said conveyance to their grantor, the railroad company, the fact appearing on the face of the conveyance."

A decree was entered quieting the title of the plaintiff to the land in controversy. The defendant appeals.

*Sapp, Lyman & Ament*, for the appellant.

*Smith, Carson & Harl*, for the appellee.

DAY, J.—I. The decision of the court below was evidently based upon the opinion of the Supreme Court of the United States in *The American Emigrant Company v. The County of Adams*, holding that the legislation of this State for the disposition of the swamp lands introduced a scheme subversive of the trust imposed upon the State by the act of congress, and is void. Since the decision of the court below a rehearing has been granted in *The American Emigrant Company v. Adams County*, and a contrary decision has been announced. It is now held that the legislation of this State, and contracts made in pursuance of it, are valid.

1. SWAMP lands : disposition of : state legislation.

II. The contract between J. P. Casady, county judge, and S. F. Nuckolls, president of the Council Bluffs & St. Joseph Railroad Company, for the conveyance of the land in question, provides as follows: " That the said party of the first part, for the consideration and object hereinafter named, doth hereby agree with the said party of the second part, to transfer and

convey to said party of the second part all of the swamp or overflowed land within said county of Pottawattamie, at the date° hereof, and not sold or covered by a *bona fide* pre-emption claim."

The deed of conveyance, executed in March, 1860, contains the following recital:

" WHEREAS, The undersigned, J. P. Casady, as county judge of Pottawattamie county, Iowa, did, on the 9th day of January, A. D. 1860, contract in writing with the Council Bluffs & St. Joseph Railroad Company for the transfer and conveyance of the swamp and overflowed land, or the proceeds thereof, to the amount of $40,000, to aid in the construction of their railroad in said county, which said contract at a special election held on the 13th day of February, A. D. 1860, was voted for and ratified by a majority of the voters of said county, pursuant to chapter 132 of the acts of the General Assembly of the State of Iowa, approved March 22d, A. D. 1858. Now, therefore, in consideration of the premises, and for the purpose of perfecting said contract, the said county of Pottawattamie doth hereby grant and convey," etc.

Prior to the making of this contract and conveyance, on the 27th day of July, 1859, the county judge of Pottawat-

2. CONVEY-ANCE: swamp lands: contract.

tamie county conveyed the land in controversy to James A. Jackson, but the deed was not filed for record until the 5th day of November, 1861. The plaintiff claims title to the land under Jackson. The appellant claims that the deed to Jackson is invalid as a conveyance, because it was not executed by the county court, nor countersigned by the clerk of said court as provided in section 935 of the Revision. If it should be conceded that this deed is ineffectual as a conveyance, it is, nevertheless, evidence of the fact that Jackson had purchased the land and was entitled to a conveyance. If it does not convey the legal title, it at least shows that Jackson had an equity in the land, by purchase and payment of the price. The contract between Casady and Nuckolls provides for the transfer and conveyance

of the swamp land within the county *not sold or covered by a bona fide pre-emption claim.* The land in controversy was sold to Jackson, and hence was not embraced in this contract. The deed to the railroad. company recites that it was made pursuant to this contract, and for the purpose of perfecting it. It is evident that it was not the purpose to convey any lands not embraced in the contract. Whilst the deed describes the land in controversy, yet it is evident from the contract, and from the testimony in the case, that it was inserted by mistake, the records in the county judge's office not showing the prior sale to Jackson. It is clear, we think, that as between the railroad company and the county, the deed was subject to be corrected so as to conform to the contract between the parties. But on the 6th day of June, 1862, the railroad company conveyed the land, for a valuable consideration, to Eva S. Nutt, who had no actual notice of the conveyance to Jackson, or of the sale to him. The defendant claims title under Nutt.

The real question in the case is, did Eva S. Nutt, or those claiming title under her, acquire an absolute title to the land, 3. ———: notice : recital in deed. unaffected by the outstanding title or equity in Jackson? The deed to the grantor of Eva S. Nutt recites that a contract was made with the railroad company for the transfer of swamp lands to the amount of $40,000, and that the conveyance is in consideration of the premises, and for the purpose of perfecting said contract. It is claimed by the appellee that this recital makes the contract a part of the deed and affects the grantees of the railroad company with notice of the provisions of the contract. *Hall v. Orvis,* 35 Iowa, 366. Let this position of the appellee for the purposes of this case be conceded; then Eva S. Nutt when she purchased from the railroad company had notice that the contract between the county and the railroad company was for the conveyance of lands only which were not sold or covered by a *bona fide* pre-emption claim. This is the extent of the information imparted to her by the deed

and contract.   She had no actual knowledge that the land in controversy had been sold to Jackson, and the deed did not impart such knowledge.   She had a right to suppose that the deed was executed in conformity with the contract, and that it covered only the lands included in it.   There was nothing in the circumstances of the conveyance to cause her to suspect a mistake, and she was not called upon to institute an investigation for the purpose of ascertaining whether the deed was correctly executed.   There was no circumstance of suspicion and nothing to stimulate inquiry.   The recitals in the deed do not impair the *bona fides* of the purchase of Mrs. Nutt, or affect her with outstanding equities of which she had no notice.

III.   This brings us to a consideration of the effect of the recording of the deed to James A. Jackson, on the 5th day of November, 1861, and before the conveyance to Eva S. Nutt.   This deed was executed by the county judge, and was not countersigned by the clerk of the County Court.   Section 935 of the Revision provides that upon the presentation of a certificate of purchase to the County Court it shall be the duty of said court to execute a deed in fee simple for the land therein described, signed in the official capacity of said court, and countersigned by the clerk of said court, with the official seal thereto affixed.   Section 141 of the Code of 1851, which was in force when this deed was executed, provides:   "The clerk of the District Court is *ex officio* the clerk of the County Court and the register of probate."   The deed in question was not executed in the manner prescribed in the statute, and, as a consequence we think it was ineffectual.   The appellee insists that the county judge is authorized to execute deeds without being countersigned by the clerk, under section 981 of the Revision.   But this section applies only to cases where parties hold certificates of pre-emption.   Jackson did not hold certificates of pre-emption, but the deed was made under chapter 13, laws of the Fourth General Assembly.   As the deed was not

*4. ——: ——: record of invalid deed.*

executed as required by law, the recording of it did not affect a subsequent purchaser with constructive notice.   It follows from these views that Eva S. Nutt and her grantees acquired title to the land unaffected by the outstanding equity in favor of Jackson and his grantees.   The decree of the court below is

REVERSED.